1   ELLEN M. MAHAN
    Deputy Section Chief
2   LORI JONAS
    Senior Attorney
3   Environment and Natural Resources Division
    United States Department of Justice
4   P.O. Box 7611, Ben Franklin Station
    Washington, DC 20044-7611
5   Telephone: (202) 514-4080

6   McGREGOR W. SCOTT
    United States Attorney
7   MATTHEW R. BELZ
    Assistant United States Attorney
8   501 I Street, Suite 10-100
    Sacramento, California 95814-2322
9   Telephone: (916) 554-2758

10  Attorneys for Plaintiff United States of America

11  ANNETTE BALLATORE-WILLIAMSON
    District Counsel (CA State Bar No. 192176)
12  San Joaquin Valley Unified Air Pollution Control District
    1990 East Gettysburg Avenue
13  Fresno, California 93726
    Telephone: (559) 230-6033

14
    Attorney for Plaintiff San Joaquin Valley Unified Air Pollution Control District

15
                    IN THE UNITED STATES DISTRICT COURT
16                 FOR THE EASTERN DISTRICT OF CALIFORNIA

17  _____
    UNITED STATES OF AMERICA,         )
18  and SAN JOAQUIN VALLEY UNIFIED    )
    AIR POLLUTION CONTROL DISTRICT    )
19                                    ) CIVIL ACTION NO.  2:19-cv-2460 CKD
                    Plaintiffs,       )
20                                    ) CONSENT DECREE
            v.                        )
21                                    )
    KERN OIL & REFINING CO.,          )
22                                    )
                    Defendant.        )
23  _____)

United States, et al. v. Kern Oil & Refining Co. Consent Decree                    Page 1

1    I.      JURISDICTION AND VENUE ........................................................................4

2    II.     APPLICABILITY AND BINDING EFFECT ...............................................5

3    III.    DEFINITIONS ...............................................................................................6

4    IV.    COMPLIANCE REQUIREMENTS ..............................................................9

5    V.      CIVIL PENALTIES......................................................................................12

6    VI.    SUPPLEMENTAL ENVIRONMENTAL PROJECTS .............................13

7    VII.    REPORTING REQUIREMENTS .................................................................19

8    VIII.    STIPULATED PENALTIES .........................................................................21

9    IX.    FORCE MAJEURE ......................................................................................26

10   X.      DISPUTE RESOLUTION ............................................................................28

11   XI.    INFORMATION COLLECTION AND RETENTION ..............................31

12   XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ...................33

13   XIII.    COSTS ........................................................................................................34

14   XIV.    NOTICES ....................................................................................................35

15   XV.    EFFECTIVE DATE .....................................................................................36

16   XVI.    RETENTION OF JURISDICTION .............................................................37

17   XVII.   MODIFICATION ........................................................................................37

18   XVIII.   TERMINATION ..........................................................................................37

19   XIX.    PUBLIC PARTICIPATION ........................................................................40

20   XX.    SIGNATORIES/SERVICE .........................................................................40

21   XXI.    INTEGRATION ..........................................................................................41

22   XXII.    APPENDIX ..................................................................................................41

23   XXIII.   FINAL JUDGMENT ...................................................................................41

1      WHEREAS, Plaintiff United States of America, by the authority of the Attorney General

2 of the United States and through its undersigned counsel, acting at the request and on behalf of

3 the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action

4 concurrently with this Consent Decree, alleging that Defendant Kern Oil & Refining Co. ("Kern

5 Oil" or "Defendant") violated Section 111 of the Clean Air Act, 42 U.S.C. § 7411, and Section

6 313 of Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C.

7 § 11023, at its petroleum refinery located in Bakersfield, California ("Kern Oil Refinery");

8      WHEREAS, the United States alleges that Kern Oil violated the following federal new

9 source performance standards, which EPA promulgated pursuant to Section 111 of the Clean Air

10 Act, 42 U.S.C. § 7411, and that apply to petroleum refineries:  (i) the fuel gas combustion device

11 requirements found at 40 C.F.R. Part 60, Subparts A and J; (ii) the equipment leak detection and

12 repair requirements found at 40 C.F.R. Part 60, Subpart GGG; and (iii) the wastewater system

13 requirements found at 40 C.F.R. Part 60, Subpart QQQ;

14      WHEREAS, the San Joaquin Valley Unified Air Pollution Control District

15 ("SJVUAPCD") has joined in this matter alleging violations of its laws, rules, and regulations

16 incorporating and implementing the foregoing federal Clean Air Act requirements;

17      WHEREAS, the United States further alleges that Kern Oil violated the federal reporting

18 requirements of Section 313 of EPCRA, 42 U.S.C. § 11023, and the regulations promulgated

19 thereunder and found at 40 C.F.R. Part 372;

20      WHEREAS, the Complaint alleges that Kern Oil is liable under Section 113(b) of the

21 Clean Air Act, 42 U.S.C. § 7413(b), and Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), for

22 the assessment of civil penalties for violations of the Clean Air Act, EPCRA, and the regulations

23 promulgated thereunder at the Kern Oil Refinery;

WHEREAS, Kern Oil does not admit any liability to the United States or SJVUAPCD arising out of the transactions or occurrences alleged in the Complaint, and does not admit any issues of law or fact related to or arising from the matters alleged in the Complaint, except as set forth in Section I (Jurisdiction and Venue) and in Paragraphs 5 and 6 in Section II (Applicability and Binding Effect) of this Consent Decree;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue) and in Paragraphs 5 and 6 in Section II (Applicability and Binding Effect) of this Consent Decree, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b); Section 325(c)(4) of EPCRA, 42 U.S.C. § 11045(c)(4); and 28 U.S.C. §§ 1331, 1345, and 1355, and over the Parties. In addition, this Court has subject matter jurisdiction over the claims of SJVUAPCD under 28 U.S.C. § 1367(a) and principles of supplemental jurisdiction because the claims of SJVUAPCD are so related to the Clean Air Act claims of the United States that they form the same case or controversy.

2.    Venue lies in this District under Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b); Section 325(c)(4) of EPCRA, 42 U.S.C. § 11045(c)(4); and 28 U.S.C. §§ 1391 and

1395, because it is the judicial district in which Defendant's principal place of business is located
and the violations alleged in the Complaint have occurred. For purposes of this Consent Decree,
or any action to enforce this Consent Decree, Defendant consents to this Court's jurisdiction over
this Consent Decree, any such action, and over Defendant, and consents to venue in this District.

3. For purposes of this Consent Decree, Defendant admits that the Complaint states
claims upon which relief may be granted against Defendant under Section 113(b) of the Clean
Air Act, 42 U.S.C. § 7413(b); Section 325(c) of EPCRA, 42 U.S.C. § 11045(c); and under
applicable California and SJVUAPCD laws, rules, and regulations.

4. Notice of the commencement of this action has been given to the California Air
Resources Board and SJVUAPCD, as required by Section 113(b) of the Clean Air Act, 42 U.S.C.
§ 7413(b).

## II.   APPLICABILITY AND BINDING EFFECT

5. The obligations of this Consent Decree apply to and are binding upon the United
States, SJVUAPCD, and upon Defendant and any successors, assigns, or other entities or persons
otherwise bound by law.

6. No transfer of ownership or operation of the Kern Oil Refinery, whether in
compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its
obligation to ensure that the terms of the Consent Decree are implemented. At least 30 Days
prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed
transferee and shall simultaneously provide written notice of the prospective transfer, together
with a copy of the proposed written agreement, to the United States, EPA, and SJVUAPCD, in
accordance with Section XIV (Notices) of this Consent Decree. Any attempt to transfer

1 ownership or operation of the Kern Oil Refinery without complying with this Paragraph

2 constitutes a violation of this Consent Decree.

3 7. Defendant shall provide a copy of this Consent Decree to all officers, employees,

4 and agents whose duties might reasonably include compliance with any provision of this Consent

5 Decree, as well as to any contractor retained to perform work required under this Consent

6 Decree.

7 8. In any action to enforce this Consent Decree, Defendant shall not raise as a

8 defense the failure by any of its officers, directors, employees, agents, or contractors to take any

9 actions necessary to comply with the provisions of this Consent Decree.

10 ## III. DEFINITIONS

11 9. Terms used in this Consent Decree that are defined in the Clean Air Act, EPCRA,

12 or in federal regulations promulgated pursuant to the Clean Air Act or EPCRA shall have the

13 meanings assigned to them in the Clean Air Act, EPCRA, or such regulations, unless otherwise

14 provided in this Consent Decree. Whenever the terms set forth below are used in this Consent

15 Decree, the following definitions shall apply:

16 a. "Amine System" shall mean the amine system at the Kern Oil Refinery,

17 designated as Permit Unit No. S-37-120 in the Kern Oil Refinery Operating Permit that

18 SJVUAPCD issued to Kern Oil in December 2017.

19 b. "C.F.R." shall mean the Code of Federal Regulations.

20 c. "Clean Air Act" shall mean the federal Clean Air Act, 42 U.S.C. §§ 7401-

21 7671q.

22 d. "Complaint" shall mean the complaint filed by the United States in this

23 action.

1     e. "Consent Decree" or "Decree" shall mean this Consent Decree, including

2    any and all appendices attached to this Consent Decree.

3     f. "Date of Lodging" shall mean the date on which the Plaintiff United States

4    lodges this Consent Decree with the United States District Court for the purpose of seeking

5    public comment on the Consent Decree.

6     g. "Day" shall mean a calendar day unless expressly stated to be a business

7    day. In computing any period of time under this Consent Decree, where the last day would fall

8    on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the

9    next business day.

10     h. "Defendant" or "Kern Oil" shall mean Kern Oil & Refining Co., and

11    includes any successors or assigns.

12     i. "Diesel Hydrotreater" shall mean the diesel hydrotreater at the Kern Oil

13    Refinery, designated as Permit Unit No. S-37-77 in the Kern Oil Refinery Operating Permit that

14    SJVUAPCD issued to Kern Oil in December 2017.

15     j. "Effective Date" shall have the definition provided in Section XV

16    (Effective Date) of this Consent Decree.

17     k. "EPA" shall mean the United States Environmental Protection Agency

18    and any of its successor departments or agencies.

19     l. "EPCRA" shall mean the federal Emergency Planning and Community

20    Right-To-Know Act, 42 U.S.C. §§ 11001-11050.

21     m. "Interest" shall mean the interest rate specified in 28 U.S.C. § 1961.

22     n. "Kern Oil Refinery" shall mean Kern Oil's petroleum refinery, located at

23    7724 East Panama Lane, Bakersfield, California.

o. "Main Flare" shall mean the primary flare at the Kern Oil Refinery, designated as Permit Unit No. S-37-7 in the Kern Oil Refinery Operating Permit that SJVUAPCD issued to Kern Oil in December 2017.

p. "Naphtha Hydrotreater" shall mean the naphtha hydrotreater at the Kern Oil Refinery, designated as Permit Unit No. S-37-118 in the Kern Oil Refinery Operating Permit that SJVUAPCD issued to Kern Oil in December 2017.

q. "Naphtha Reformer" shall mean the naphtha reformer at the Kern Oil Refinery, designated as Permit Unit No. S-37-119 in the Kern Oil Refinery Operating Permit that SJVUAPCD issued to Kern Oil in December 2017.

r. "NSPS" shall mean the New Source Performance Standard promulgated pursuant to Section 111 of the Clean Air Act, 42 U.S.C. § 7411, and codified at 40 C.F.R. Part 60.

s. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral, including subparts thereof identified by lower case English letters.

t. "Parties" shall mean the United States, SJVUAPCD, and Defendant.

u. "Plaintiffs" shall mean the United States and SJVUAPCD.

v. "Section" shall mean a portion of this Consent Decree identified by an upper-case Roman numeral.

w. "SEP" or "SEPs" shall mean the supplemental environmental project(s) required by this Consent Decree.

x. "SJVUAPCD" shall mean the San Joaquin Valley Unified Air Pollution Control District and any successor departments or agencies of the State of California.

1        y.     "Sour Water System" shall mean the sour water system at the Kern Oil

2  Refinery, designated as Permit Unit No. S-37-121 in the Kern Oil Refinery Operating Permit that

3  SJVUAPCD issued to Kern Oil in December 2017.

4        z.     "Sulfur Recovery Plant" shall mean the sulfur recovery plant at the Kern

5  Oil Refinery, designated as Permit Unit No. S-37-122 in the Kern Oil Refinery Operating Permit

6  that SJVUAPCD issued to Kern Oil in December 2017.

7        aa.    "ULSD Project Units" or "Ultra-Low Sulfur Diesel Project Units" shall

8  mean the Diesel Hydrotreater, Naphtha Hydrotreater, Naphtha Reformer, Amine System, Sour

9  Water System, and Sulfur Recover Plant.

10      bb.    "United States" shall mean the United States of America, acting on behalf

11  of EPA.

12      cc.    "VOC" shall mean volatile organic compounds.

13      dd.    "Wastewater System" shall mean the wastewater system (as that term is

14  defined in 40 C.F.R. § 60.691) at the Kern Oil Refinery, which includes, but is not limited to, the

15  affected facilities designated in 40 C.F.R. § 60.690 and currently included as part of the

16  following units in the Kern Oil Refinery Operating Permit that SJVUAPCD issued to Kern Oil in

17  December 2017: Permit Unit Nos. S-37-7, S-37-9, S-37-118, S-37-119, S-37-121, S-37-122, and

18  S-37-149. The scope of this definition is subject to change based on, among other things, future

19  constructions, modifications, or reconstructions of affected facilities; or future revisions to the

20  Kern Oil Refinery Operating Permit.

21                 IV.    **COMPLIANCE REQUIREMENTS**

22     10.    <u>NSPS Applicability to the Main Flare</u>. Beginning no later than the Date of

23  Lodging, the Main Flare (i) shall be an "affected facility" as that term is used in 40 C.F.R. Part

60, Subparts A and Ja; (ii) shall be designated as a "non-emergency flare" as that term is used in 40 C.F.R. § 60.101a; and (iii) shall be subject to and comply with the applicable requirements of 40 C.F.R. Part 60, Subparts A and Ja, including, but not limited to, all the following requirements:

        a.     Flare management plan requirements of 40 C.F.R. § 60.103a(a)-(b);

        b.     Root cause and corrective action requirements of 40 C.F.R. § 60.103a(c)-(e);

        c.     Fuel gas hydrogen sulfide limit of 40 C.F.R. § 60.103a(h);

        d.     Hydrogen sulfide continuous monitoring system requirements of 40 C.F.R. § 60.107a(a)(2); sulfur continuous monitoring system requirements for assessing root cause analysis threshold of 40 C.F.R. § 60.107a(e); flow continuous parameter monitoring system requirements of 40 C.F.R. § 60.107a(f); and the monitoring requirements of 40 C.F.R. § 60.13 (including, but not limited to, the requirement of 40 C.F.R. § 60.13(e) that continuous monitoring systems be in continuous operation, except for system breakdowns, repairs, calibration checks, and zero and span adjustments required under 40 C.F.R. § 60.13(d));

        e.     Flare requirements of 40 C.F.R. § 60.18(b)-(f);

        f.     Compliance and maintenance requirements of 40 C.F.R. § 60.11 and the prohibition on circumvention of 40 C.F.R. § 60.12; and

        g.     Recordkeeping and reporting requirements of 40 C.F.R. §§ 60.7 and 60.108a(c)-(d).

    11.    <u>NSPS Applicability to the ULSD Project Units</u>.  Beginning no later than the Date of Lodging, each group of equipment in VOC service at the Diesel Hydrotreater, Naphtha Hydrotreater, Naphtha Reformer, Amine System, Sour Water System, and Sulfur Recover Plant

1　　(i) shall be an "affected facility" as that term is used in 40 C.F.R. § 60.2 and either § 60.590(a)-

2　　(b) or § 60.590a(a)-(b); and (ii) shall be subject to and comply with the applicable requirements

3　　of 40 C.F.R. Part 60, Subpart A and either Subpart GGG or Subpart GGGa.

4　　　　12.　NSPS Applicability to the Wastewater System.　Beginning no later than the Date

5　　of Lodging, the Wastewater System shall be an "affected facility" as that term is used in 40

6　　C.F.R. §§ 60.2 and 60.690(a); and shall be subject to and comply with the applicable

7　　requirements of 40 C.F.R. Part 60, Subpart A and QQQ.

8　　　　13.　EPCRA Compliance Certification.　By no later than 180 Days after the Effective

9　　Date of this Consent Decree, Kern Oil shall provide EPA with a written certification that the

10　Kern Oil Refinery is in compliance with the reporting requirements of Section 313 of EPCRA,

11　which includes, but is not limited to, the completion of all of the following actions:

12　　　　　　a.　For each of the following toxic chemicals processed or otherwise used at

13　the Kern Oil Refinery in the calendar years specified, the submission to EPA and the State of

14　California of EPCRA Form R reports (which, in some cases, will result in the replacement of

15　previously submitted EPCRA Form A reports) that are based on readily available data or, where

16　such data are not readily available, reasonable estimates of the amounts involved:　(i) 1,2,4

17　trimethylbenzene processed in 2009, 2010, 2011, 2012, 2013, and 2014; (ii) benzo(g,h,i)perylene

18　processed in 2009, 2010, 2011, 2012, 2013, and 2014; (iii) lead compounds processed in 2009,

19　2010, 2011, 2012, 2013, and 2014; (iv) mercury compounds processed in 2009, 2010, 2011,

20　2012, 2013, and 2014; (v) naphthalene processed in 2009, 2010, 2011, and 2012;

21　(vi) molybdenum trioxide otherwise used in 2009; and (vii) cyclohexane processed in 2011.

22

23

## V.    CIVIL PENALTIES

14.    In satisfaction of the civil claims asserted by the United States and SJVUAPCD in the Complaint filed in this matter, within 30 Days after the Effective Date of this Consent Decree, Kern Oil shall pay civil penalties totaling $500,000 as follows:  (i) $250,000 plus Interest accruing from the Date of Lodging (at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging) to the United States; and (ii) $250,000 plus Interest accruing from the Date of Lodging (at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging) to SJVUAPCD.

15.    Federal Payment Instructions.  Payment of the civil penalty to the United States shall be made by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing United States Department of Justice Case Number 90-5-2-1-10464 and the civil action case name and case number of this action in the Eastern District of California.  The costs of such EFT shall be the responsibility of Kern Oil. Payment shall be made in accordance with instructions provided to Kern Oil by the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of California.  Any funds received after 5:00 p.m. (EST) shall be credited on the next business day.  Promptly after payment, Kern Oil shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, to the United States and EPA in accordance with Section XIV (Notices) of this Consent Decree; by email to cinwd_acctsreceivable@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 West Martin Luther King Drive
> Cincinnati, Ohio  45268

The transmittal letter shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Kern Oil & Refining Co.*, and shall reference the civil action number and United States Department of Justice case number 90-5-2-1-10464.

16. <u>SJVUAPCD Payment Instructions</u>. Payment of the civil penalty to SJVUAPCD shall be made by certified check made payable to the "San Joaquin Valley Unified Air Pollution Control District" and sent by United States Mail to the SJVUAPCD District Counsel's office at the following address:

> 1990 East Gettysburg Avenue
> Fresno, California 93726
> ATTN: Annette Ballatore-Williamson

17. Kern Oil or any other person or entity, including, but not limited to, any parent company of Kern Oil, shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal, state, or local income tax.

18. Upon the Effective Date of this Consent Decree, this Consent Decree shall constitute an enforceable judgment for purposes of post-judgment collection in accordance with Federal Rule of Civil Procedure 69; the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001-3308; and other applicable federal authority. The United States and SJVUAPCD shall be deemed judgment creditors for purposes of collecting any unpaid amounts of civil and stipulated penalties and Interest.

## VI. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

19. Kern Oil shall implement the SEPs described in Paragraphs 20 and 21, in accordance with all the provisions in this Section.

20. <u>Infrared Gas-Imaging Camera SEP</u>. Kern Oil shall implement the Infrared Gas-Imaging Camera SEP, which provides for the purchase of an infrared gas-imaging camera and its exclusive use at the Kern Oil Refinery. The purpose of the infrared gas-imaging camera is to locate VOC fugitive emissions at the Kern Oil Refinery that may not be otherwise detected by EPA Method 21 of 40 C.F.R. Part 60, and to take corrective action to address fugitive emissions identified by the infrared gas-imaging camera. Kern Oil is responsible for the satisfactory completion of the Infrared Gas-Imaging Camera SEP, where "satisfactory completion" means completing all of the following:

a. Within 60 Days after the Effective Date of the Consent Decree, Kern Oil shall purchase an infrared gas-imaging camera (such as a FLIR camera or its equivalent) for exclusive use at the Kern Oil Refinery.

b. Within 180 Days after the Effective Date of the Consent Decree, Kern Oil shall develop and submit an Infrared Gas-Imaging Camera Protocol to the United States, EPA, and SJVUAPCD. The Infrared Gas-Imaging Camera Protocol shall be designed to effectively utilize the infrared gas-imaging camera for locating VOC fugitive emissions at the Kern Oil Refinery and shall include the corrective action steps that Kern Oil will take to address fugitive emissions identified by the infrared gas-imaging camera. At a minimum, the Infrared Gas-Imaging Camera Protocol shall address the following operational criteria: (i) frequency of using the infrared gas-imaging camera (but no less than every two months); (ii) identification of process unit(s) that certified personnel will monitor with an infrared gas-imaging camera; (iii) calibration procedures; (iv) startup (i.e., warming-up the infrared gas-imaging camera) and shutdown procedures; (v) video recording and retention; (vi) operational considerations stemming from weather conditions (e.g., wind speed, temperature, and visibility);

1 (vii) maintenance of the instrument; (viii) certification of personnel to use the infrared gas-

2 imaging camera; (ix) minimum number of hours of field use under the direction of certified

3 personnel prior to performing monitoring; (x) recordkeeping procedures; and (xi) procedures for

4 reporting results and corrective actions to EPA and SJVUAPCD.

5         c.       Within 180 Days after the Effective Date of the Consent Decree, Kern Oil

6 shall complete training of personnel who use the infrared gas-imaging camera at the Kern Oil

7 Refinery on the (i) infrared gas-imaging camera fundamentals and operation; and

8 (ii) implementation of the Infrared Gas-Imaging Camera Protocol.

9         d.       Kern Oil shall implement the Infrared Gas-Imaging Camera Protocol

10 exclusively at the Kern Oil Refinery for a minimum of five years following the Effective Date of

11 this Consent Decree.

12      21.    Emergency Responder Equipment SEP. Kern Oil shall implement the Emergency

13 Responder Equipment SEP, which provides for the purchase and donation of emergency

14 response equipment to the Kern County Public Health Services Department, Environmental

15 Health Division ("Kern County PHSD/EHD") and the Kern County Fire Department, for use by

16 first responders operating in the area of the Kern Oil Refinery. Kern Oil is responsible for the

17 satisfactory completion of the Emergency Responder Equipment SEP, where "satisfactory

18 completion" means completing all of the following:

19         a.       Within 90 Days after the Effective Date of the Consent Decree, Kern Oil

20 shall submit purchase orders to vendors for emergency response equipment, including at least the

21 emergency response equipment listed in Part 1 of Appendix A to this Consent Decree. Within

22 180 Days after the Effective Date of the Consent Decree, Kern Oil shall purchase and donate to

the Kern County PHSD/EHD emergency response equipment, including at least the emergency response equipment listed in Part 1 of Appendix A to this Consent Decree.

b. Within 90 Days after the Effective Date of the Consent Decree, Kern Oil shall submit purchase orders to vendors for emergency response equipment, including at least the emergency response equipment listed in Part 2 of Appendix A to this Consent Decree. Within 180 Days after the Effective Date of the Consent Decree, Kern Oil shall purchase and donate to the Kern County Fire Department emergency response equipment, including at least the emergency response equipment listed in Part 2 of Appendix A to this Consent Decree.

22. With regard to both SEPs, Kern Oil certifies the truth and accuracy of each of the following:

a. That all cost information provided to EPA in connection with EPA's approval of the SEPs was complete and accurate at the time provided to EPA, and that Kern Oil in good faith estimates that the cost to implement the Infrared Gas-Imaging Camera SEP is $100,000 and the cost to implement the Emergency Responder Equipment SEP is $100,0000;

b. That, as of the date of executing this Consent Decree, Kern Oil is not required to perform or develop either of the SEPs by any federal, state, or local law, regulation, rule, or permit and is not required to perform or develop either of the SEPs by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c. That the SEPs are not projects that Kern Oil was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree (e.g., until the Consent Decree is terminated, the infrared gas-imaging camera will not be purchased or used to meet any monitoring obligations under Sections 42705.5 or 42705.6 of the California Health and Safety Code or any implementing rules thereunder);

1        d.    That Kern Oil has not received and will not receive credit for the SEPs in

2   any other enforcement action;

3        e.    That Kern Oil will not receive any reimbursement for any portion of the

4   SEPs from any other person; and

5        f.    That (i) Kern Oil is not a party to any open federal financial assistance

6   transaction that is funding or could fund the same activity as the SEPs described in Paragraphs

7   20 and 21; and (ii) Kern Oil has inquired of the Kern County PHSD/EHD and the Kern County

8   Fire Department whether either Department is a party to an open federal financial assistance

9   transaction that is funding or could fund the same activity as the Emergency Responder

10  Equipment SEP and has been informed by the Kern County PHSD/EHD and the Kern County

11  Fire Department that each Department is not a party to such a transaction. For purposes of these

12  certifications, the term "open federal financial assistance transaction" refers to a grant,

13  cooperative agreement, loan, federally-guaranteed loan guarantee, or other mechanism for

14  providing federal financial assistance whose performance period has not yet expired.

15      23.    SEP Completion Report. Within 60 Days after completion of each SEP (i.e., no

16  later than 150 Days after the Effective Date of this Consent Decree for the Emergency

17  Responder Equipment SEP and no later than five years and 60 Days after the Effective Date of

18  this Consent Decree for the Infrared Gas-Imaging Camera SEP), Kern Oil shall submit a SEP

19  Completion Report to the United States and EPA, in accordance with Section IX (Notices) of this

20  Consent Decree. Each SEP Completion Report shall contain all of the following information:

21        a.    A reasonably detailed description of the SEP as implemented;

22        b.    A description of any problems encountered in completing the SEP and the

23  solutions thereto;

c.     An itemized list of all eligible SEP costs expended;

d.     Certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree including any modifications thereto; and

e.     A description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

24.     EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Kern Oil's SEP Completion Reports.

25.     Within 90 Days after receiving each SEP Completion Report, the United States shall notify Kern Oil whether or not Kern Oil has satisfactorily completed each SEP. If Kern Oil has not completed each SEP in accordance with this Consent Decree, stipulated penalties may by assessed under Section VIII (Stipulated Penalties) of this Consent Decree.

26.     Disputes concerning the satisfactory performance of each SEP and the amount of eligible SEP costs may be resolved under Section X (Dispute Resolution) of this Consent Decree. No other disputes arising under this Section shall be subject to Dispute Resolution.

27.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 34.

28.     Any public statement, oral or written, in print, film, or other media, made by Kern Oil making reference to either of the SEPs under this Consent Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, *United States and San Joaquin Valley Unified Air Pollution Control District v. Kern Oil & Refining Co.*, taken on behalf of the United States Environmental Protection Agency under the Clean Air Act and the Emergency Planning and Community Right-To-Know Act, and by the San

1  Joaquin Valley Unified Air Pollution Control District under the State of California Health and

2  Safety Code."

3      29.     For federal, state, or local income tax purposes, Kern Oil agrees that it will neither

4  capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the

5  SEPs.

6      30.     If Kern Oil satisfactorily completes the SEPs, but does not spend the full amount

7  of the estimates set forth in Paragraph 22.a, and if EPA determines that the amount remaining

8  reasonably could be applied toward another SEP, within 30 Days of EPA's written

9  determination, Kern Oil shall propose an alternative SEP for the balance remaining for the

10  review and approval of EPA.

11      **VII.    REPORTING REQUIREMENTS**

12      31.     By July 31st and January 31st of each year after the Effective Date of this Consent

13  Decree, until termination of this Consent Decree pursuant to Section XVIII (Termination), Kern

14  Oil shall submit by electronic mail a semi-annual report for the preceding six months (i.e.,

15  January to June or July to December) that shall include all of the following:

16          a.     The status of any compliance measures; completion of milestones; and

17  problems encountered or anticipated that may affect timely completion of the obligation in

18  Section IV (Compliance Requirements) or Section VI (Supplemental Environmental Projects),

19  together with implemented or proposed solutions.

20          b.     As an attachment, a copy of each NSPS notification or report (including,

21  but not limited to, semiannual reports submitted pursuant to 40 C.F.R. §§ 60.7(c),

22  60.487(a)/60.592(e), and 60.698(b)-(c)) regarding the Kern Oil Refinery that Kern Oil submitted

1 to EPA or to SJVUAPCD during the reporting period for the following NSPS: 40 C.F.R. Part
2 60, Subparts Ja, GGG, GGGa, and QQQ.

3         c.      The report shall also include a description of any noncompliance with the
4 requirements of this Consent Decree and an explanation of the violation's likely cause and of the
5 remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of such
6 violation cannot be fully explained at the time the report is due, Kern Oil shall so state in the
7 report. Kern Oil shall investigate the cause of such violation and shall then submit an
8 amendment to the report, including a full explanation of the cause of such violation, within 30
9 Days of the Day Kern Oil becomes aware of the cause of such violation. Nothing in this
10 Paragraph or the following Paragraph relieves Kern Oil of its obligation to provide the notice
11 required by Section IX (Force Majeure) of this Consent Decree.

12      32.     Whenever any violation of this Consent Decree or of any applicable Clean Air
13 Act permit or any other event affecting Kern Oil's performance under this Consent Decree or the
14 performance of the Kern Oil Refinery under this Consent Decree, may pose an immediate threat
15 to the public health or welfare or the environment, Kern Oil shall notify EPA and SJVUAPCD
16 orally or by electronic mail as soon as possible, but no later than 24 hours after Kern Oil first
17 knew of the violation or event. This procedure is in addition to the requirements set forth in the
18 preceding Paragraph.

19      33.     All reports shall be submitted to the persons designated in Section XIV (Notices)
20 of this Consent Decree.

21      34.     Each report submitted by Kern Oil under this Section shall be signed by an
22 official of Kern Oil and include the following certification:

23

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

35. The certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

36. The reporting requirements of this Consent Decree do not relieve Kern Oil of any reporting obligations required by the Clean Air Act, EPCRA, or implementing regulations thereunder, or by any other federal, state, or local law, regulation, permit, or other requirement.

37. Any information provided pursuant to this Consent Decree may be used by the United States or SJVUAPCD in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

38. Kern Oil shall be liable for stipulated penalties to the United States and SJVUAPCD for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure) of this Consent Decree. A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent

Decree and within the specified time schedules established by or approved under this Consent Decree.

39. <u>Late Payment of Civil Penalties</u>. If Kern Oil fails to pay any portion of the civil penalties required to be paid under Section V (Civil Penalties) of this Consent Decree when due, Kern Oil shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late, together with Interest. Late payment of the civil penalties shall be made in accordance with Section V (Civil Penalties) of this Consent Decree. Stipulated penalties for late payment of the civil penalties shall be paid in accordance with Paragraph 50 below. All transmittal correspondence shall state that any such payment is for late payment of the civil penalties due under this Consent Decree, or for stipulated penalties for late payment, as applicable, and shall include the identifying information set forth in Paragraph 15, above.

40. <u>Failure to Comply with Section IV (Compliance Requirements)</u>. With the exception of the notification and reporting requirements subject to Paragraph 41 below, the following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Section IV (Compliance Requirements), including, but not limited to, any violation of any requirement of (i) 40 C.F.R. Part 60, Subpart A or Ja at the Main Flare; (ii) 40 C.F.R. Part 60, Subparts A, GGG, or GGGa at the ULSD Project Units; or (iii) 40 C.F.R. Part 60, Subpart A or QQQ at the Wastewater System:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $2,000 | 1st through 30th Day |
| $6,000 | 31st Day and beyond |

41. <u>Failure to Comply with the Notification or Reporting Requirements of Section IV (Compliance Requirements) or VII (Reporting Requirements)</u>. The following stipulated penalties shall accrue per violation per Day for each violation of the notification or reporting requirements of Section IV (Compliance Requirements) or Section VII (Reporting Requirements), including, but not limited to, any violation of any notification or reporting requirement of (i) 40 C.F.R. Part 60, Subpart A or Ja at the Main Flare; (ii) 40 C.F.R. Part 60, Subparts A, GGG, or GGGa at the ULSD Project Units; or (iii) 40 C.F.R. Part 60, Subpart A or QQQ at the Wastewater System:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

42. <u>Failure to Comply with Section VI (Supplemental Environmental Projects)</u>. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Section VI (Supplemental Environmental Projects), including, but not limited to, any failure to satisfactorily complete a SEP by the deadlines set forth in Section VI:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

43. <u>Other Consent Decree Requirements</u>. If Kern Oil fails to comply with any other requirement of this Consent Decree not specifically referenced in Paragraphs 39 or 42 above,

1  Kern Oil shall pay a stipulated penalty of $1,000 per violation per Day for each violation of this

2  Consent Decree.

3      44.    Stipulated penalties under this Section shall begin to accrue on the Day after

4  performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

5  to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated

6  penalties shall accrue simultaneously for separate violations of this Consent Decree.

7      45.    Kern Oil shall pay stipulated penalties to the United States and SJVUAPCD

8  within 30 Days of receiving the United States' written demand or SJVUAPCD's written demand.

9  Except for stipulated penalties for violations of Paragraph 13 (EPCRA Compliance Certification)

10  or Paragraph 21 (Emergency Responder Equipment SEP) for which Kern Oil shall pay 100

11  percent of the total stipulated penalty amount to the United States, Kern Oil shall pay 50 percent

12  of the total stipulated penalty amount due to the United States and 50 percent to SJVUAPCD.

13  The Plaintiff making a demand for payment of a stipulated penalty shall consult with the other

14  Plaintiff prior to making a demand. The Plaintiff making a demand for payment of a stipulated

15  penalty shall simultaneously send a copy of the demand to the other Plaintiff.

16      46.    Stipulated penalties shall accrue regardless of whether the United States or

17  SJVUAPCD has notified Kern Oil of a violation of the Consent Decree or issued a written

18  demand for the payment of stipulated penalties.

19      47.    After consultation with each other, the United States or SJVUAPCD may, in the

20  unreviewable exercise of its discretion, reduce or waive the amount of stipulated penalties

21  otherwise due to that Plaintiff under this Consent Decree.

22      48.    Stipulated penalties shall continue to accrue as provided in Paragraph 44, during

23  any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Kern Oil shall pay accrued penalties determined to be owing, together with Interest, to the United States and SJVUAPCD within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States or SJVUAPCD prevails in whole or in part, Kern Oil shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c., below.

c.     If any Party appeals the District Court's decision, Kern Oil shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

49.     Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Consent Decree shall be retroactively enforceable with regard to any and all violations of Paragraphs 10, 11, 12, and 31 that have occurred from the Date of Lodging and prior to the Effective Date, provided that stipulated penalties that may have accrued since the Date of Lodging which occur prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

50.     Kern Oil shall pay stipulated penalties owing to the United States and SJVUAPCD in the manner set forth and with the confirmation notices required by Paragraphs 15 and 16, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

51.     If Kern Oil fails to pay stipulated penalties according to the terms of this Consent Decree, Kern Oil shall be liable for interest on such penalties, as provided for in 28 U.S.C.

1 § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be

2 construed to limit the United States from seeking any remedy otherwise provided by law for

3 Kern Oil's failure to pay any stipulated penalties.

4      52.     Stipulated penalties are not the United States' or SJVUAPCD's exclusive remedy

5 for violations of this Consent Decree. Subject to the provisions of Section XII (Effect of

6 Settlement/Reservation of Rights) of this Consent Decree, the United States and SJVUAPCD

7 expressly reserve the right to seek any other relief they each deem appropriate for Kern Oil's

8 violation of this Consent Decree or applicable law, including, but not limited to, an action against

9 Kern Oil for statutory penalties, additional injunctive relief, mitigation or offset measures and/or

10 contempt. However, the amount of any statutory penalty assessed for a violation of this Consent

11 Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and

12 paid pursuant to this Consent Decree.

13                     **IX.     FORCE MAJEURE**

14      53.     "Force majeure," for purposes of this Consent Decree, is defined as any event

15 arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

16 Defendant's contractors, that delays or prevents the performance of any obligation under this

17 Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that

18 Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate

19 any potential force majeure event and best efforts to address the effects of any potential force

20 majeure event (a) as it is occurring and (b) following the potential force majeure event, such that

21 the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include

22 Defendant's financial inability to perform any obligation under this Consent Decree.

23

1    54.    If any event occurs or has occurred that may delay the performance of any

2  obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant

3  shall provide notice orally or by electronic mail to the Manager of the Air & TRI Section,

4  Enforcement Division, U.S. EPA Region 9 and SJVUAPCD, within 7 Days of when Defendant

5  first knew that the event was reasonably likely to cause a delay.  Within 7 Days thereafter,

6  Defendant shall provide in writing to EPA and SJVUAPCD an explanation and description of the

7  reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to

8  prevent or minimize the delay; a schedule for implementation of any measures to be taken to

9  prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such

10  delay to a force majeure event if it intends to assert such a claim; and a statement as to whether,

11  in the opinion of Defendant, such event may cause or contribute to an endangerment to public

12  health, welfare, or the environment.  Defendant shall include with any notice available

13  documentation supporting the claim that the delay was attributable to a force majeure event.

14  Failure to comply with the above requirements shall preclude Defendant from asserting any

15  claim of force majeure for that event for the period of time of such failure to comply, and for any

16  additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance

17  of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or

18  should have known.

19    55.    If EPA, after a reasonable opportunity for SJVUAPCD's review and comment,

20  agrees that the delay or anticipated delay is attributable to a force majeure event, the time for

21  performance of the obligations under this Consent Decree that are affected by the force majeure

22  event will be extended by EPA, after a reasonable opportunity for SJVUAPCD's review and

23  comment, for such time as is necessary to complete those obligations.  An extension of the time

1 for performance of the obligations affected by the force majeure event shall not, of itself, extend

2 the time for performance of any other obligation. EPA will notify Defendant in writing of the

3 length of the extension, if any, for performance of the obligations affected by the force majeure

4 event.

5     56.     If EPA, after a reasonable opportunity for SJVUAPCD's review and comment,

6 does not agree that the delay or anticipated delay has been or will be caused by a force majeure

7 event, EPA will notify Defendant in writing of its decision.

8     57.     If Defendant elects to invoke the dispute resolution procedures set forth in Section

9 X (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any

10 such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the

11 evidence that the delay or anticipated delay has been or will be caused by a force majeure event,

12 that the duration of the delay or the extension sought was or will be warranted under the

13 circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

14 that Defendant complied with the requirements of Paragraphs 53 and 54. If Defendant carries

15 this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected

16 obligation of this Consent Decree identified to EPA and the Court.

17                 **X.     DISPUTE RESOLUTION**

18     58.     Unless otherwise expressly provided for in this Consent Decree, the dispute

19 resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

20 under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute

21 under this Section shall preclude Defendant from raising any such issue as a defense to an action

22 by the United States or SJVUAPCD to enforce any obligation of Defendant arising under this

23 Consent Decree.

59.  Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States and SJVUAPCD, if applicable, a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with SJVUAPCD, shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

60.  Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and SJVUAPCD a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

61.  After consultation with SJVUAPCD, the United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

62.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and SJVUAPCD, in accordance with Section XIV (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

63.     The United States and/or SJVUAPCD shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

64.     Standard of Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 62, Defendant shall have the burden of demonstrating that its position complies with this Consent Decree, that its proposal will achieve compliance with the Kern Oil Refinery's permits and the relevant environmental statutes in an expeditious manner, and that it is entitled to relief under applicable principles of law. The United States and SJVUAPCD reserve the right to argue that the United States' position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with the law.

65.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

1  payment shall be stayed pending resolution of the dispute as provided in Paragraph 48. If

2  Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid

3  as provided in Section VIII (Stipulated Penalties).

4  ## XI. INFORMATION COLLECTION AND RETENTION

5  66. The United States, SJVUAPCD, and their representatives, including attorneys,

6  contractors, and consultants, shall have the right of entry into the Kern Oil Refinery, at all

7  reasonable times, upon presentation of credentials, to:

8      a.    monitor the progress of activities required under this Consent Decree;

9      b.    verify any data or information submitted to the United States in

10  accordance with the terms of this Consent Decree;

11      c.    obtain samples and, upon request, splits of any samples taken by

12  Defendant or its representatives, contractors, or consultants;

13      d.    obtain documentary evidence, including photographs and similar data; and

14      e.    assess Defendant's compliance with this Consent Decree, the Clean Air

15  Act, EPCRA, and the regulations promulgated thereunder.

16  67. Upon request, Defendant shall provide EPA, SJVUAPCD, or their authorized

17  representatives splits of any samples taken by Defendant. Upon request, EPA or SJVUAPCD

18  shall provide Defendant splits of any samples taken by EPA or SJVUAPCD.

19  68. Until five years after the termination of this Consent Decree, Defendant shall

20  retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all

21  documents, records, or other information (including documents, records, or other information in

22  electronic form) in its or its contractors' or agents' possession or control, or that come into its or

23  its contractors' or agents' possession or control, and that relate in any manner to Defendant's

1  performance of its obligations under this Consent Decree. This information-retention

2  requirement shall apply regardless of any contrary corporate or institutional policies or

3  procedures. At any time during this information-retention period, upon request by the United

4  States or SJVUAPCD, Defendant shall provide copies of any documents, records, or other

5  information required to be maintained under this Paragraph.

6       69.    At the conclusion of the information-retention period provided in the preceding

7  Paragraph, Defendant shall notify the United States and SJVUAPCD at least 90 Days prior to the

8  destruction of any documents, records, or other information subject to the requirements of the

9  preceding Paragraph and, upon request by the United States or SJVUAPCD, Defendant shall

10  deliver any such documents, records, or other information to EPA or SJVUAPCD, as applicable.

11       70.    Defendant may assert that certain documents, records, or other information is

12  privileged under the attorney-client privilege or any other privilege recognized by federal law. If

13  Defendant asserts such a privilege, it shall provide the following: (i) the title of the document,

14  record, or information; (ii) the date of the document, record, or information; (iii) the name and

15  title of each author of the document, record, or information; (iv) the name and title of each

16  addressee and recipient; (v) a description of the subject of the document, record, or information;

17  and (vi) the privilege asserted by Defendant. However, no documents, records, or other

18  information created or generated pursuant to the requirements of this Consent Decree shall be

19  withheld on grounds of privilege. Defendant may also assert that information required to be

20  provided under this Section is protected as Confidential Business Information ("CBI") under 40

21  C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall

22  follow the procedures set forth in 40 C.F.R. Part 2.

23

1    71.    This Consent Decree in no way limits or affects any right of entry and inspection,

2  or any right to obtain information, held by the United States or SJVUAPCD pursuant to

3  applicable federal, state, or local laws, regulations, or permits, nor does it limit or affect any duty

4  or obligation of Defendant to maintain documents, records, or other information imposed by

5  applicable federal, state, or local laws, regulations, or permits.

6         **XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS**

7    72.    This Consent Decree resolves the civil claims of the United States and

8  SJVUAPCD for the violations alleged in the Complaint filed in this action through the Date of

9  Lodging.

10    73.    The United States and SJVUAPCD reserve all legal and equitable remedies

11  available to enforce the provisions of this Consent Decree.  Except as set forth in Paragraph 72

12  above, this Consent Decree shall not be construed to limit the rights of the United States or

13  SJVUAPCD to obtain penalties or injunctive relief under the Clean Air Act, EPCRA, or the

14  implementing regulations thereunder, or under other federal laws, regulations, or permit

15  conditions, or the laws, rules, regulations, or permits of the State of California or SJVUAPCD.

16  The United States and SJVUAPCD further reserve all legal and equitable remedies to address

17  any imminent and substantial endangerment to the public health or welfare or the environment

18  arising at, or posed by, Defendant's Kern Oil Refinery, whether related to the alleged violations

19  addressed in this Consent Decree or otherwise.

20    74.    In any subsequent administrative or judicial proceeding initiated by the United

21  States or SJVUAPCD for injunctive relief, civil penalties, or other appropriate relief relating to

22  the Kern Oil Refinery, Defendant shall not assert, and may not maintain, any defense or claim

23  based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim

preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or SJVUAPCD in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 72.

75.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and SJVUAPCD do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Air Act, EPCRA, or with any other provisions of federal, State, or local laws, regulations, or permits.

76.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or SJVUAPCD against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

77.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.   COSTS

78.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and SJVUAPCD shall be entitled to collect the costs (including

1    attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any

2    stipulated penalties due but not paid by Defendant.

3                            XIV.    **NOTICES**

4         79.    Unless otherwise specified herein, whenever notifications, submissions, or

5    communications are required by this Consent Decree, they shall be made in writing and

6    addressed as follows:

7    As to the United States by email:    eescdcopy.enrd@usdoj.gov
                                          Re: DOJ No. 90-5-2-1-10464
8
     As to the United State by mail:      EES Case Management Unit
9                                         Environment and Natural Resources Division
                                          U.S. Department of Justice
10                                        P.O. Box 7611
                                          Washington, D.C. 20044-7611
11                                        Re: DOJ No. 90-5-2-1-10464

12   As to EPA by email:                  mintz.tom@epa.gov

13   As to EPA by mail:                   Manager, Air Section (ENF-2-1)
                                          Enforcement and Compliance Assurance Division
14                                        U.S. Environmental Protection Agency, Region 9
                                          75 Hawthorne Street
15                                        San Francisco, California 94105

16                                                    and

17                                        Thomas P. Mintz (ORC-2)
                                          Office of Regional Counsel
18                                        U.S. Environmental Protection Agency, Region 9
                                          75 Hawthorne Street
19                                        San Francisco, California 94105

20   As to SJVUAPCD by email:             ryan.hayashi@valleyair.org
                                          Annette.ballatore@valleyair.org
21
     As to SJVUAPCD by mail:              Director of Compliance
22                                        San Joaquin Valley Unified Air Pollution Control District
                                          1990 East Gettysburg Avenue
23                                        Fresno, California 93726

and

District Counsel
San Joaquin Valley Unified Air Pollution Control District
1990 East Gettysburg Avenue
Fresno, California 93726

As to Kern Oil by email:        Dmccoy1@kernoil.com

As to Kern Oil by mail:         David A. McCoy
                                Vice President Refining
                                Kern Oil & Refining Co.
                                7724 East Panama Lane
                                Bakersfield, California 93307

and

Craig A. Moyer
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064

80.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

81.     Except as otherwise provided, notice to a Party by electronic mail (if that option is provided in Paragraph 79) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

82.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.     EFFECTIVE DATE

83.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant

1   hereby agrees that it shall be bound to perform duties expressly scheduled herein to occur on or

2   after the Date of Lodging and prior to the Effective Date. In the event the United States

3   withdraws or withholds consent to this Consent Decree before entry, or the Court declines to

4   enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur

5   before the Effective Date shall terminate.

6   ## XVI.   RETENTION OF JURISDICTION

7   84.   The Court shall retain jurisdiction over this case until termination of this Consent

8   Decree, for the purpose of resolving disputes arising under this Consent Decree or entering

9   orders modifying this Consent Decree, pursuant to Sections X (Dispute Resolution) and XVII

10  (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

11  ## XVII.   MODIFICATION

12  85.   The terms of this Consent Decree may be modified only by a subsequent written

13  agreement signed by all the Parties. Where the modification constitutes a material change to this

14  Consent Decree, it shall be effective only upon approval by the Court.

15  86.   Any disputes concerning modification of this Consent Decree shall be resolved

16  pursuant to Section X (Dispute Resolution) of this Consent Decree, provided, however, that,

17  instead of the burden of proof provided by Paragraph 64, the Party seeking the modification

18  bears the burden of demonstrating that it is entitled to the requested modification in accordance

19  with Federal Rule of Civil Procedure 60(b).

20  ## XVIII.   TERMINATION

21  87.   After Defendant (i) has completed the requirements of Section IV (Compliance

22  Requirements) of this Consent Decree, which may be done in accordance with Paragraph 90

23  (Certification of Completion) below; (ii) has completed the requirements of Section VI

(Supplemental Environmental Projects) of this Consent Decree; (iii) has complied with all other requirements of this Consent Decree; and (iv) has paid the civil penalties and any accrued stipulated penalties as required by this Consent Decree and no penalties or other monetary obligations due under this Consent Decree are outstanding or owed to the United States or SJVUAPCD, Defendant may serve upon the United States and SJVUAPCD a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

88.     Following receipt by the United States and SJVUAPCD of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If both Plaintiffs agree that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

89.     If Plaintiffs do not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section X of this Consent Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of their Request for Termination.

90.     Certification of Completion. Prior to requesting termination under Paragraph 87 above and no earlier than one (1) year after the Effective Date of this Consent Decree, at any time after operation for one (1) year in continuous compliance with the requirements in Section IV (Compliance Requirements), Defendant may submit a written report to the United States and SJVUAPCD certifying that (i) the requirements of Section IV have been completed in full satisfaction of the requirements of this Consent Decree; and (ii) the Defendant is in substantial

and material compliance with Section IV of the Consent Decree. The report shall include the certification in Paragraph 34 of this Consent Decree, signed by a responsible corporate official of Defendant. For the purpose of this Paragraph, at the very least, Defendant cannot be "in substantial and material compliance" with Paragraph 10 of Section IV of the Consent Decree (NSPS Applicability to the Main Flare) if, at any time during the period Defendant claims continuous compliance, Defendant did not meet the requirements to submit only a summary excess emission and monitoring system performance report under 40 C.F.R. § 60.7(d)(1) for the Main Flare.

        a.      Upon receipt of Defendant's written report, if the United States, after consultation with SJVUAPCD, concludes that the requirements in Section IV have not been fully complied with, the United States will notify the Defendant. Defendant has the right to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) regarding the United States' conclusion.

        b.      Upon receipt of Defendant's written report, if the United States, after consultation with SJVUAPCD, concludes that the requirements in Section IV have been fully complied with, the United States will so certify to the Defendant. This certification will constitute the certification of completion of Section IV of the Consent Decree for purposes of this Consent Decree. Commencing with the semiannual report for the first full calendar half after Defendant's receipt of the United States' certification of completion, Defendant will no longer be required to include in the semiannual reports under Section VII of this Consent Decree information regarding compliance with Section IV of the Consent Decree. However, nothing in this Paragraph or in this Consent Decree shall excuse or exempt Defendant from submitting to EPA, SJVUAPCD, or both any notification or report required under NSPS or EPCRA.

1     c.     Nothing in this Paragraph 90 will preclude the United States or

2 SJVUAPCD from seeking stipulated penalties for a violation of any of the requirements of the

3 Consent Decree regardless of whether a certification of completion has been issued under this

4 Paragraph 90. In addition, regardless of whether a certification of completion has been issued,

5 nothing in this Paragraph 90 will permit Defendant to fail to implement any ongoing obligations

6 under the Consent Decree (except the Section VII semiannual reporting specified in Paragraph

7 90.b above) or any ongoing obligation under the Clean Air Act or EPCRA.

8 ## XIX.    PUBLIC PARTICIPATION

9     91.     This Consent Decree shall be lodged with the Court for a period of not less than

10 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States

11 reserves the right to withdraw or withhold its consent if the comments regarding the Consent

12 Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

13 improper, or inadequate. Defendant consents to entry of this Consent Decree without further

14 notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to

15 challenge any provision of the Decree, unless the United States has notified Defendant and the

16 SJVUAPCD in writing that it no longer supports entry of the Consent Decree.

17 ## XX.    SIGNATORIES/SERVICE

18     92.     Each undersigned representative of Defendant, SJVUAPCD, and the Assistant

19 Attorney General for the Environment and Natural Resources Division of the Department of

20 Justice certifies that he or she is fully authorized to enter into the terms and conditions of this

21 Consent Decree and to execute and legally bind the Party he or she represents to this document.

22     93.     This Consent Decree may be signed in counterparts, and its validity shall not be

23 challenged on that basis. Defendant agrees to accept service of process by mail with respect to

all matters arising under or relating to this Consent Decree and to waive the formal service
requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any
applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.   INTEGRATION

94.     This Consent Decree constitutes the final, complete, and exclusive agreement and
understanding among the Parties with respect to the settlement embodied in the Consent Decree
and supersedes all prior agreements and understandings, whether oral or written, concerning the
settlement embodied herein.  The Parties acknowledge that there are no representations,
agreements, or understandings relating to the settlement other than those expressly contained in
this Consent Decree.

## XXII.   APPENDIX

95.     The following appendix is attached to and part of this Consent Decree:
"Appendix A:  Emergency Response Equipment SEP."

## XXIII.  FINAL JUDGMENT

96.     Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment of the Court as to the United States, SJVUAPCD, and
Defendant.

Dated and entered this ___19___ day of ___March___, ~~201~~ 2020 .

Carolyn K. Delaney
~~U.S. Magistrate Judge~~
~~UNITED STATES DISTRICT JUDGE~~

Signature page for Consent Decree in *United States and San Joaquin Valley Unified Air Pollution Control District v. Kern Oil & Refining Co.*

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

10/16/19
_____
Date

_____
ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

11/26/19
_____
Date

_____
LORI JONAS
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 514-4080

12/9/19
_____
Date

_____
MATTHEW R. BELZ
Assistant United States Attorney
United States Attorney's Office
Robert T. Matsui United States Courthouse
501 I Street, Suite 10-100
Sacramento, California 95814-2322
Telephone: (916) 554-2758

Signature page for Consent Decree in *United States and San Joaquin Valley Unified Air Pollution Control District v. Kern Oil & Refining Co.*

**FOR UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, REGION 9:**

9/20/19
Date

SYLVIA QUAST
Regional Counsel
United States Environmental Protection Agency, Region 9

Of Counsel:

THOMAS P. MINTZ
Assistant Regional Counsel
United States Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California 94105
Telephone: (415) 972-3896

Signature page for Consent Decree in *United States and San Joaquin Valley Unified Air Pollution Control District v. Kern Oil & Refining Co.*

**FOR THE SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT:**

Sept. 10, 2019
Date

ANNETTE BALLATORE-WILLIAMSON
District Counsel
San Joaquin Valley Unified Air Pollution Control District
1990 East Gettysburg Avenue
Fresno, California 93726
Telephone: (559) 230-6033

Signature page for Consent Decree in *United States and San Joaquin Valley Unified Air Pollution Control District v. Kern Oil & Refining Co.*

**FOR KERN OIL & REFINING CO.:**

8/19/19
Date

DAVID A. McCOY
Vice President Refining
Kern Oil & Refining Co.
7724 East Panama Lane
Bakersfield, California 93307